STATE *vs.* JOSEPH GEMMA.

APRIL 30, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This is an indictment for larceny, charging that the defendant did feloniously steal, take and carry away from the possession of certain "trustees of the New York, New Haven & Hartford Railroad Company, Debtor, a corporation, two hundred fifty tons of steel rails, located on the property of" the trustees at Burrillville, in the county of Providence, and all of the value of $3800.

The defendant pleaded not guilty, was tried in the superior court on the indictment, and a jury rendered a verdict of guilty. Subsequently the defendant's motion for a new trial, based on the usual grounds, was denied by the trial justice. The case is here on the defendant's single exception to this ruling, denying his motion for a new trial.

The undisputed evidence shows that these trustees of the railroad were in lawful possession of a railroad right-of-way between Harrisville and Woonsocket; that this was improved by one track several miles in length; and that the rails were affixed as usual to wooden ties which were imbedded in the ground. The railroad was not abandoned, although service was suspended on a portion thereof between Harrisville and Glendale. Regular supervision thereof continued at least twice a year.

The defendant admitted at the trial that he was solely responsible for the taking and carrying away from this railroad of about two hundred tons of steel rails, which he sold to a junk dealer in Providence, and for which he received the equivalent of over $2000. The defendant did not deny that the rails were severed and were the subject of larceny. The sole defense relied upon at the trial was his alleged good faith and lack of any criminal intent in taking and carrying away the rails. He claimed the right to remove them by virtue of an alleged contract in writing with one whom he described as "Herbert M. Wheeler."

According to the defendant, Wheeler had a Packard automobile registered in Rhode Island; was well known to the defendant for several years; had no office but frequently lunched with defendant in a certain restaurant where he also was well known; and lived, according to his own statement, at 406 Pine street in Providence. However, an extensive check upon these places revealed no clue to any such person. There was no such automobile registration, no such person living at or near the house address given, and no such person known to the management, waiters, or various patrons of the restaurant. The defendant claimed he was a business man and paid Wheeler two payments totaling $500 in cash for the contract, but he neither asked for nor received any receipt from Wheeler.

This claim of a contract for purchase of the rails differed, according to the junk dealer, from the statement first made by the defendant to him when the defendant was arranging to sell the rails. The defendant then asserted that he owned the land abutting on the railroad and that, upon abandonment of the railroad, the land and the attached rails reverted to him as the abutting owner. The evidence showed that the defendant never owned any such land at any time and that the railroad was never abandoned. His sister-in-law did own fifty-nine lots valued at about $200, some or all of which land abutted on or was near the railroad.

The defendant admitted his signatures on his applications for a secondhand store license, for an automobile registration and an operator's license, for a notary public commission, in which he used the name of "Frank J. Gemma", and also as a witness appearing upon two deeds relating to his sister-in-law's lots. Comparing the signature of "Herbert M. Wheeler" on the alleged contract with the above admitted signatures of the defendant, a handwriting expert testified that: "The questioned signature on the agreement was written by the author of the various standard writings presented, that is, the notary signatures on the two deeds and also Exhibits 3, 4 and 5, and that consists of the application for secondhand license, the registration and also the application for driver's license."

The defendant admitted records of convictions and sentences for crime, such as larceny in Connecticut, larceny in New York and false representations in Rhode Island. His close friend and foreman on this job also admitted a record of conviction for tampering with an automobile, and another of his witnesses had a record of two convictions for violations of the United States statutes. The jury on the evidence apparently did not believe the defendant's claim of good faith.

In this court, however, counsel for the defendant have completely shifted the ground of defense to highly technical contentions concerning the subject of larceny at common law. They now argue, substantially, that the verdict was contrary to law because the rails, being affixed to the realty, were not chattels which could be the subject of larceny at common law and were not included, as such chattels, under the statutes of this state.

Summarized, they now contend: (1) The rails, being attached to the ground, are regarded as a part of the realty and their felonious removal is at common law merely a trespass upon realty and not larceny of personal property; (2) the rails, although cut into convenient lengths, *were not severed from the land* but remained permanently affixed thereto as

before, and so their subsequent taking, after remaining affixed to the soil overnight for the taker's own convenience, is not larceny; and (3) the only evidence of the taking of personal property is evidence of the taking of an undetermined quantity and value of steel rails which remained on the ground overnight and, therefore, a verdict of guilty under an indictment for larceny of personal property of the value of $3800 is against the evidence.

The first two of these contentions are open to two serious objections. First, they would change in substance and effect the law that was given to the jury by the court's charge, and that ground of exception is not now available to the defendant. At the trial no exception was taken to the charge as given and no request for instructions was made by the defendant. There is not the slightest showing in the transcript that the jury failed to follow the law as given to them by the court. We find no reason in the transcript or argument to make an exception to the ordinary rule that, in the absence of timely exception or request for instructions, the charge of the court becomes the settled law of the case.

Secondly, if such ground were now available, both of these contentions must fail because they are based on erroneous assumptions of facts. The facts thus assumed not only are not in evidence but they are contrary to it. Notwithstanding the confident assertions by defendant's counsel in their brief that there is no evidence to show any severance of the rails from the realty, our own examination of the entire transcript shows uncontradicted evidence to the contrary.

The rails, according to the evidence, were all handled in the same way. They were cut and ripped up from their original attachment to the railroad ties and then "were pushed one side on the ties", or to the side of the tracks. Thus separated from their original attachment, they remained for various periods of time, before being carried away, sufficient to convert them from real to personal property in the constructive possession of the trustees of the railroad. There is

no evidence that the severance and asportation of any portion of these rails constituted one continuous operation by the same person, as in *Hyden* v. *State,* 136 Tenn. 294, which is relied upon by the defendant.

The facts here are different and distinguishable from those in the numerous cases cited by the defendant which deal with the technicalities of larceny at common law. We therefore need not discuss those cases or the technicalities they present, except to note that they are of an age when the penalty for larceny was so severe that courts were led to adopt highly technical reasoning at times to avoid the harshness of the penalty. The defendant's first two contentions, therefore, are objectionable upon grounds of law and of fact, and they cannot be sustained.

The defendant's third contention also is based upon an erroneous assumption which is contrary to the evidence in the case. There is ample evidence of inspection by railroad agents of the mileage in which the rails were removed and the estimated quantity of such rails. The defendant himself admitted sole responsibility for taking and carrying away at least two hundred tons valued at $9 per gross ton, and the receipt by him of credit from the junk dealer of $2070.49, of which $1803.85 was received in cash. According to the testimony of the railroad agents, the value of the rails in question was $3800. The third contention, therefore, being based on an assumption which is contrary to fact, must fall of its own weight.

The failure of the trial justice to set out any reason for refusing the defendant's motion for a new trial has deprived us of the benefit of his independent judgment upon the credibility of the witnesses and the weight to be given their testimony, and upon the sufficiency of the testimony to support beyond a reasonable doubt the verdict of the jury. In this circumstance, we have examined the transcript and considered the testimony independently of the action of the trial justice, and we are convinced that, under the law as given,

there was ample evidence to support the verdict. In fact, we are unable to see how the jury could have reached any other conclusion without refusing to follow the evidence and instructions of the court.

The exception of the defendant is overruled, and the case is remitted to the superior court for further proceedings.

*John P. Hartigan,* Attorney General, *John E. Mullen,* 3rd Asst. Atty Gen., *Hyman Lisker,* 4th Asst. Atty Gen., for State.

*George Ajootian, Henry R. DiMascolo,* for defendant.